[No. A046239. First Dist., Div. One. May 24, 1990.]

KHOURIE, CREW & JAEGER, Plaintiff and Respondent, v. SABEK, INC., et al., Defendants and Appellants.

**COUNSEL**

Amen, Keith & Berg and Robert Berg for Defendants and Appellants.

Thomas A. Jenkins for Plaintiff and Respondent.

**OPINION**

**STEIN, J.**—Can a corporation attempt to avoid service of process by refusing to unlock its door, permit default to be entered against it and then successfully complain on appeal that the trial court abused its discretion in refusing to set aside the resulting judgment? We find that it cannot and affirm the order denying relief from default.

Sabek, Inc., Andy Saberi, and V.T. Petroleum, Inc. (hereafter Sabek) appeal from the order of the superior court denying Sabek's motion to set aside a judgment after default taken against it by Khourie, Crew & Jaeger (hereafter Khourie) for legal services rendered.

Sabek moved to set aside the default on the grounds that it was never properly served with Khourie's summons and complaint and/or that it reasonably failed to respond to the notice that Khourie intended to take its default because Sabek's principal, Andy Saberi, was reasonably mistaken in believing that service was not effective.

FACTS

On December 1, 1989, Murray Woods, a process server, went to Sabek's place of business at approximately 4:30 in the afternoon in order to serve its agent, Saberi, with Khourie's summons and complaint. Sabek's door was locked. A woman responded when Woods rang the bell. She refused to tell him her name and refused to unlock the door. Woods explained his purpose and she stated that she was " 'not accepting the papers.' " "I then told the woman that I was leaving the summons and complaints outside the locked door. She was watching as I placed the documents just outside the door." On December 7, 1988, Woods mailed a copy of the summons and complaint to Sabek at its place of business. On January 16, 1989, Khourie's attorney, Thomas Jenkins, wrote to Saberi that a summons and complaint had been served on Sabek on December 1, 1988, and mailed on December 7, 1988, and informed Saberi that he would file a request to take Sabek's default if no responsive pleading was filed on or before January 24, 1989. On January 23, Saberi wrote that Sabek had not been served with a summons and complaint and "[w]e, therefore, need 60 days inorder [sic] to prepare and file a responsive pleading." On January 25, Jenkins wrote that Khourie would grant Sabek an extension to February 1, 1989, in which to file a responsive pleading. No pleading was filed. On March 6, 1989, Khourie took Sabek's default and on April 3, 1989, sought and received judgment against Sabek. On April 25, Sabek filed its motion to set aside the default and default judgment.

DISCUSSION

■ Code of Civil Procedure section 473 empowers the trial court to relieve a party from a judgment taken against "him or her through his or her mistake, inadvertence, surprise or excusable neglect." The ruling of the trial court on a motion for relief from default will not be disturbed absent a clear showing of abuse of discretion. (*Ludka* v. *Memory Magnetics International* (1972) 25 Cal.App.3d 316, 321 [101 Cal.Rptr. 615].)

Sabek argues that the trial court abused its discretion in refusing to set aside the default (1) because the attempted service on Sabek was defective and (2) even if service was not defective, Sabek's failure to answer was excusable.

I.

*The Evidence Supported a Finding That Sabek Was Properly Served*

■ Sabek never moved to quash service of summons. The question of whether service was properly made, therefore, is relevant only as it tends to

support the argument that the trial court abused its discretion in denying the motion to set aside the default.

Sabek is a domestic corporation and thus may be served as provided under Code of Civil Procedure section 416.10.[1] Code of Civil Procedure section 415.20 provides, as relevant: "(a) In lieu of personal delivery of a copy of the summons and of the complaint to the person to be served as specified in Section 416.10, . . . a summons may be served by leaving a copy of the summons and of the complaint during usual office hours in his office with the person who is apparently in charge thereof, and by thereafter mailing a copy of the summons and of the complaint (by first-class mail, postage prepaid) to the person to be served at the place where a copy of the summons and of the complaint were left. Service of a summons in this manner is deemed complete on the 10th day after such mailing."

Here Khourie's process server, Murray Woods, attempted to leave a copy of the summons and complaint during usual office hours with the person apparently in charge of Sabek's office—i.e., the only person who responded to his attempt to enter. Woods thereafter, in compliance with Code of Civil Procedure section 415.20, sent a copy of the complaint and summons to Sabek's principal officer, Saberi. Under the circumstances, service was completed on December 17, 10 days after the December 7th mailing.

Saberi's argument that the service of process failed because Woods did not somehow manage to get past the locked door and into the office is unpersuasive. ■ The evident purpose of Code of Civil Procedure section 415.20 is to permit service to be completed upon a good faith attempt at physical service on a responsible person, plus actual notification of the action by mailing the summons and complaint to the appropriate party.

■ It is established that a defendant will not be permitted to defeat service by rendering physical service impossible. In *In re Ball* (1934) 2 Cal.App.2d 578 [38 P.2d 411], it was held that effective service was made when the process server informed the defendant that he had " 'another one of those things for you,' " and when the defendant moved away, threw the summons and complaint so that it fell a few feet away from the defendant. "We take it that when men are within easy speaking distance of each other and facts occur that would convince a reasonable man that personal service of a legal document is being attempted, service cannot be avoided by

---

[1] "A summons may be served on a corporation by delivering a copy of the summons and of the complaint: [¶] (a) To the person designated as agent for service of process . . . [¶] (b) To the president or other head of the corporation, a vice president, a secretary or assistant secretary, a treasurer or assistant treasurer, a general manager, or a person authorized by the corporation to receive service of process."

denying service and moving away without consenting to take the document in hand." (*Id.* at p. 579.)

In *Ludka* v. *Memory Magnetics International, supra,* 25 Cal.App.3d 316, a default judgment was upheld against the argument that it should have been set aside because service of process was faulty. In that case the process server entered the defendant's offices and, unable to obtain access to a corporate officer, threw the papers on a coffee table saying " 'You're served.' " Copies of the summons and complaint were thereafter sent to the defendant. The defendant argued that service was improper because the receptionist, upon whom service ostensibly was made, was not then his secretary nor an agent for service of process on the corporation, and because a third party in the reception area, declaring that service had not been made, threw the papers into the wastebasket. It was held that the service of process "amply complied" with section 415.20 and that the gratuitous actions of the third party did not render service ineffective. (*Id.* at pp. 320-321.) ■ Here, the process server provided actual notice of the documents to the person apparently in charge of Sabek's office and, prevented by that person from leaving them inside the office, left them on the other side of the office door. No more was required to effect service other than to mail to Saberi a copy of the summons and complaint.

Sabek points out that it introduced evidence, in the form of declarations, that tend to contradict the declaration of Murray Woods.[2] The trial court, however, was entitled to believe Woods.

## II.

### *The Court Did Not Abuse Its Discretion in Denying the Motion*

■ Sabek argues that the default judgment was taken against it through its excusable neglect and that the trial court therefore should have granted its motion for relief from default. Sabek rests its argument, in part, on language from *Slusher* v. *Durrer* (1977) 69 Cal.App.3d 747, 753-754 [138 Cal.Rptr. 265]: "The policy of the law favors, wherever possible, a hearing on the merits; appellate courts are more disposed to affirm an order where the result compels a trial on the merits than they are when the default judgment is permitted to stand, and it appears that a meritorious defense may be available. (*Weitz* v. *Yankosky* (1966) 63 Cal.2d 849, 854 [48

---

[2] Sabek argues: "Appellant's declarations establish that the office security policy was to ignore all unexpected visitors, who were kept outside the locked front door; that the office manager was not contacted by the process server; that no one in the office received any legal papers on the day of alleged service; and that no one in the office on the day of alleged service fits the description given in the proof of service filed with the court."

Cal.Rptr. 620, 409 P.2d 700].) Phrased differently, the policy of the law is to have every case tried on its merits and that policy views with disfavor a party who, regardless of the merits, attempts to take advantage of the mistake, inadvertence, or neglect of his adversary. (*A & B Metal Products* v. *MacArthur Properties, Inc.* (1970) 11 Cal.App.3d 642, 648 [89 Cal.Rptr. 873].)"

The language in *Slusher* simply restates the principle that a defendant who appears to have a meritorious defense should not be precluded from having its day in court where its failure to act was excusable. Here, however, Sabek made no showing whatsoever that it had a meritorious defense; and a poor showing of excusable neglect.

The evidence discloses that Sabek received one copy of the summons and complaint on December 1, 1988, when Woods, watched by Sabek's employee, left it outside Sabek's door. Sabek did nothing. Sabek received a second copy of the summons and complaint when Woods mailed it on December 7. Sabek still did nothing. When counsel for Khourie informed Sabek that Khourie intended to take its default, Sabek waited until the day before its responsive pleading was due and then wrote, requesting a 60-day extension of time to respond. Khourie gave Sabek approximately a week's extension of time. Sabek did nothing, nor did it take any action for the following month, when default was entered, or for a month after that. Sabek did nothing until over three weeks had passed from the date default was entered. Sabek had had more than enough opportunity to file a motion to quash or other responsive pleading prior to the entry of its default and had ample warning that default would be taken.[3]

The order is affirmed.

Racanelli, P. J., and Newsom, J., concurred.

A petition for a rehearing was denied June 25, 1990, and appellants' petition for review by the Supreme Court was denied August 1, 1990.

---

[3] Sabek's actions, we think, are well summed up in Khourie's brief: "While difficult to visualize, it appears that appellant sat on his hands at the same time he thumbed his nose at the judicial process."